# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**
JUL 11 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ISMAIL ABDUL MALIK,  )
a/k/a/ ROY THOMAS    )
Reg. No. 11340-007   )
USP-Big Sandy        )

(Enter your full name, prison number and address)

v.

CIVIL ACTION NO. _____
(To be supplied by the Clerk of the District Court)

DISTRICT OF COLUMBIA        )
CORRECTIONS CORPORATION     )
OF AMERICA,                 )
TRANSCOR                    )

(Enter the full name and address(es), if known, of defendant(s) in this action)

CASE NUMBER  1:05CV01374

JUDGE: Rosemary M. Collyer

DECK TYPE: Pro se General Civil

DATE STAMP: 07/11/2005

**JURY ACTION**

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

### Instructions for filing a Complaint by a Prisoner Under the Civil Rights Act, 42 USC §1983

This packet contains one copy of a complaint form and one copy of an application to proceed *in forma pauperis*. To start an action, you must file an original and one copy of this complaint form.

Your complaint must be clearly handwritten or typewritten and you must sign and declare under penalty of perjury that the facts are correct. If you need additional space to answer a question, you may use another blank page.

Your complaint can be brought in this Court only if one or more of the named defendants is located within the District of Columbia. Further, you must file a separate complaint for each claim that you have unless they are related to the same incident or problem. The law requires that you state only facts in your complaint.

You must supply a certified copy of your prison trust account, pursuant to the provisions of 28 USC §1915, effective April 26, 1996. The filing fee is $150.00.. If insufficient funds exist in your prison account at the time of filing your complaint, the court must assess, and when funds exist, collect an initial filing fee equal to 20 percent of the greater of:

(1) the average monthly deposits to your prison account, or
(2) the average monthly balance of your prison account for the prior six-month period.

**RECEIVED**
JUN 16 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Thereafter, you are required to make monthly payments of 20% of the preceding month's income. The agency having custody over you must forward payments from your account to the clerk of the court each time the amount in the account exceeds $10.00 until the filing fees are paid.

Therefore, before an assessment can be made regarding your ability to pay, you <u>must</u> submit a certified copy of your prison account for the prior six-month period.

When this form is completed, mail it and the copies to the Clerk of United States District Court for the District of Columbia, 333 Constitution Ave., N.W., Washington, D.C. 20001.

I.  **SUCCESSIVE CLAIMS**

Pursuant to the Prison Litigation Reform Act of 1995, unless a prisoner claims to be in "imminent danger of serious physical injury," he or she may not file a civil action or pursue a civil appeal *in forma pauperis* "if the prisoner has, on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or they failed to state a claim upon which relief could be granted."

II. **PREVIOUS LAWSUITS**

A.  Have you begun other lawsuits in state or federal court dealing with the same or similar facts involved in this action?    Yes (x)    No ( )

B.  Have you begun other lawsuits in state or federal court relating to your imprisonment?  Yes ( )    No (X)

C.  If your answer to A or B is Yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

   1. Parties to this previous lawsuit.

      Plaintiffs: ISMAIL ABDUL MALIK, a/k/a/ ROY THOMAS

      Defendants: DISTRICT OF COLUMBIA, CORRECTIONS CORPORATION OF AMERICA, TRANSCOR

   2. Court (if federal court, name the district; if state court, name the county) Initiated in D.C. Sup. Ct. removed to U.S. District Court for the District of Columbia

   3. Docket number 03-cv-0944(RMC)

   4. Name of judge to whom case was assigned: Rosemary M Collyer

   5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)  Case dismissed without prejudice
      Appeal docketed, however appellant withdrew appeal in favor of refiling the suit.

2

6.  Approximate date of filing lawsuit: D.C. Sup. Ct. 12/13/02
    Removed to District Court 4/28/03

7.  Approximate date of disposition: Memorandum Opinion issued January 20, 2004.

## I. SUCCESSIVE CLAIMS

Pursuant to the Prison Litigation Reform Act of 1995, unless a prisoner claims to be in "imminent danger of serious physical injury," he or she may not file a civil action or pursue a civil appeal *in forma pauperis* "if the prisoner has, on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or they failed to state a claim upon which relief could be granted."

## III. PLACE OF CONFINEMENT

USP- Big Sandy, P.O. Box 2068, Inez, KY 41224

A.  Is there a prisoner grievance procedure in this institution?  Yes (x)   No ( )
    If your answer is Yes, go to Question III B. If your answer is No, skip Question III B,C and D and go to Question III E.

B.  Did you present the facts relating to your complaint in the prisoner grievance procedure?  Yes (x)   No ( )

C.  If your answer is Yes to Question III B;

    1.  To whom and when did you complain?  Plaintiff complained to Defendant Corrections Corporation of America and to Transcor.

    2.  Did you complain in writing? (Furnish copy of the complaint you made, if you have one.)  Yes (x)   No ( )

    3.  What, if any, response did you receive? (Furnish copy of response, if in writing.)  Received only negative responses

    4.  What happened as a result of your complaint?  Nothing.

3

D.  If your answer is No to Question III B, explain why not. _____
_____
_____

E.  If there is no prison grievance procedure in the institution, did you complain to prison authorities?   Yes ( )    No ( )

F.  If your answer is Yes to Question III E:

1.  To whom and when did you complain? _____
_____

2.  Did you complain in writing? (Furnish copy of the complaint you made, if you have one.)

3.  What, if any, response did you receive? (Furnish copy of response if in writing) _____
_____

4.  What happened as a result of your complaint? _____
_____
_____

## IV. PARTIES

In item A below, place your name and prison number in the first blank and your present address in the second blank. Do the same for additional plaintiffs, if any.

A.  Name of Plaintiff: ISMAIL ABDUL MALIK, a/k/a/ ROY THOMAS
    Address: USP Big Sandy, P. O. Box 2068, Inez, KY 41224

In item B below, place the full name of the defendant(s) in the first blank, their official position in the second blank, their place of employment in the third blank and their address in the fourth blank. Do the same for additional defendants, if any.

B.  Defendant: DISTRICT OF COLUMBIA                is employed
    as A MUNICIPAL CORPORATION     at The District Building
    Address: 1350 Pennsdylvania Avenue, N.W.
             Washington, D. C.

    Defendant: Corrections Corporation of America    is employed
    as a private corporation        at Tennessee
    Address: 102 Woodmont Blvd., Suite 800, Nashville, Tenn. 37205

    Defendant: TRANSCOR                              is employed as
    A TRansport Company             at _____
    Address: _____

4

Defendant: _____ is employed as _____ at _____
Address: _____

## V. STATEMENT OF CLAIM

State here as briefly as possible the <u>facts</u> of your case. Describe how each defendant is involved. Include the names of other persons involved, dates and places. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra sheets if necessary.

SEE ATTACHED SEPARATE SHEETS

## VI. RELIEF

State briefly exactly what you want the Court to do for you.

WHEREFORE, PLAINTIFF PRAYS FOR A JUDGMENT AGAINST DEFENDANTS AWARDING COMPENSATORY DMAMAGES IN THE AMOUNT OF TWO HUNDRED AND FIFTY THOUSAND DOLLARS($250,000.00); punitive damages to discourage similar conduct in the future; trial by jury on all issues so triable; and any other relief the court deems to be fair and equitable.

*Clarnuel Abdul Malik / Roy Thomas*

Signed this 10 day of JUNE, 2005.

5

_[signature]_
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

6/10/05
(Date)

_[signature]_
(Signature of Plaintiff)

Additional Sheet page One

V. STATEMENT OF CLAIM

    This is a complaint for violation of civil rights pursuant to 42 U.S.C. §1983, under color of state law. The defendants exhibited "deliberate indifference" to plaintiff's serious medical needs, and forced plaintiff to be exposed to conditions that violate the Eighth Amendment ban against cruel and unusual treatment. Plaintiff alleges further that these acts and/or omissions were deliberate and intended to cause plaintiff to suffer the wanton infliction of pain and suffering.

    On July 2, 2001, the defendants forced the plaintiff, who suffers with asthma, to be exposed to second-hand smoke in the confines of a bus on a more than forty(40) hour ride from the Northeast Ohio Correctional Center(NOCC) in Youngstown, Ohio to the Central Arizona Detention Facility(CADF) in Florence, Arizona. Both of these private prisons are owned and operated by defendant Corrections Corporation of America(CCA).

    Plaintiff was incarcerated at NOCC due to a contract between defendant District of Columbia and defendant CCA. PLaintiff at all relevant times, has been a prisoner convicted in the District of Columbia, and serving sentences imposed in the Superior Court of the District of Columbia. Defendant CCA, on information and belief, either owns or contracts with, defendant Transcor to transport prisoners to and from its private prisons. On February 14, 1997,Defendant District of Columbia("The District"), first contracted with defendant CCA to confine 1,700 D.C. inmates within defendant CCA's prisons.(Exhibit A, Contract of February 14, 1997, contract #7239-AA-NS-1-HT). The contract called for the contractor(CCA) to transport the District's prisoners to the CCA facilities.(Exhibit B, Contract, February 14, 1997, Page 7, Article 4). In a subsequent contract(#7349-AA-03-1-HT)defendant the District set out that prisoners were to be transported in compliance with American Correctional Association(ACA) standards.(Exhibit C, Contract #7349-AA-03-1-HT) page R12-13). On page R28 the Contract specified that inmates could not be removed from defendant CCA's facilities, absent special circumstances, without defendant the District's prior written authorization.(Exhibit D, Contract #7349-AA-03-1-HT, Page R28).

    During the bus ride to CADF plaintiff was clad in an orange jumpsuit. Plaintiff was handcuffed at the waist with a belly-chain, attached to a "black box." The "black box" is a square device used to particularly restrain and restrict the movement of the hands and wrists, purporting to impede escape attempts. As a result of the tightness and the restriction of movement, handcuffing in this manner increases pain and swelling in the hands and wrists.

ISMAIL ABDUL MALIK a/k/a/ ROY THOMAS V. DISTRICT OF COLUMBIA, et al.,

**Additonal Sheet Page Two** (Statement of Claim con't)

The black box causes these problems for many men, even if worn for a short period of time, however a period of over 40 hours straight presents problems for most anyone. Plaintiff was further restricted by being handcuffed in a manner that the belly chain was attached to that of another inmate. Plaintiff and all other prisoners also wore leg shackles.

    The aformentiond restrictions caused plaintiff to be impeded in efforts to urinate while on the bus trip. As a result, plaintiff was forced to urinate upon himself. Due to the circumstances, it was impossible for plaintiff to defecate, so the plaintiff was forced to hold this body function until reaching the destination in Arizona. The guards employed by defendant Transcor would not remove the chains to separate the pairs of inmates, for any reason, which foreclosed any bowel movements. Defendants collectively and individually, showed deliberate indifference to serious medical conditions in forcing the plaintiff aggravate his conditions with asthma, due to the exposure to such a large volume of second-hand smoke in the confines of a bus. This unduly exposed plaintiff to the possibility of suffering an asthma attack which, at its worse, could have been fatal. Although plainitff had his inhaler on his person, the restrictions mentioned above precluded plaintiff from using the inhaler. Since the incident of July 2-4, 2001, plaintiff has developed sporadic watering of the eyes, which irritates the membranes of the eyes and impairs vision. Plaintiff has been hampered in the pursuit to further his health in participation in sports activities(i.e. softball, basket ball, handball, etc.) due to the watering of the eyes causing blurred vision. Additionally, plaintiff cannot perform certain jobs which would pay more in industrial trades, due to a fear of the blurred vision impairing the ability to use toools which may puncture the skin while plaintiff's vision is blurred.

    Plaintiff has also experienced an increase in coughing and fluid build up in the lungs and chest, since the incident complained of herein. In addition the tightness of the cuffs and restriction of movement has caused sharp pains daily in both wrists. The hands and wrists are weaker which impairs my ability to work on manual labor jobs, due to not being able to maintain my grip on tools or machinery.

    The bus that plaintiff was transported on during the incident had the windows secured in a fashion that prevented them from being opened in any manner. The toilet on the bus was not operative and there was no water for drinking or to wash hands.

Additional Sheet Page Three (Statement of Claim con't)

The trip to defendant CCA's facility in Florence, Arizona, was non-stop, except on information and belief: for the guards to take bathroom breaks; to purchase meals for the prisoners and guards; and to purchase fuel for the bus. The ventilation on the bus was inadequate and especially so in view of the close proximity of the inmates smoking and lack of ability of the plaintiff to avoid inhaling the second-hand smoke. Defendant Transcor and defendant CCA had a duty to inspect the bus and ensure that the bus would function properly and in a manner that plaintiff would not be exposed to such a large volume of second-hand smoke. Defendant the District, pursuant to 24 D.C. Code §442, had a duty to provide the proper treatment, care, safekeeping, and subsistence of prisoners committed to the custody of the D. C. Department of Corrections, an agency of defendant the District, a municipal corporation, and a "person" under 42 U.S.C.

## OFFICERS AND OFFICIALS CUSTOM AND PRACTICE OF PHYSICALLY ABUSING PRISONERS

At times relevant to this case, and for several years previously, it was the commonly understood practice of many D. C. Correctional officers and officials to pysically abuse prisoners in retaliation for prior grievances or suits. (See Blango v. District of Columbia, et al., Civil Action No. 99cv2179 (D.D.C. 1998)). In Blango Id., a settlement was reached before trial in a case where it was alleged that "beatings were systematically carried out by many officers as organized, malicious, and sadistic 'going away party.'" The beatings were inflicted by D. C. Department of Corrections officers as prisoners were being procesed for transfer from Lorton's Occoquan Facility to the NOCC. Many of the offending officers stated that the beatings were in retaliation for prior filings by inmates. The circumstances supported an inference that the beatings were part of a longstanding, widespread, custom and practice of correctional officers and officials. See Bordero v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) (existence of unconstitutional custon "inferred from the event itself," which involved the joint actions of the entire night watch, "thus supporting reasonable inference ... that all of the officers involved were operating under a shared set of rules and customs.").

Additionally, currently pending in this Court is a class action lawsuit that involves nearly identical acts and/or omissions by the defendants in the case at bar. See Battle, et al., v. District of Columbia, et al., Civil Action No. 99cv1788 & consolidated case No. 00cv2000. In Battle, convicted District of Columbia prisoners experienced nearly identical abuses as those alleged herein. (i.e. handcuffs too tight, leg shackles also intentionally applied too tightly to prisoners ankles, damages including pain, swelling, and lasting residual injury).

ISMAIL ABDUL MALIK, a/k/a ROY THOMAS v. DISTRICT OF COLUMBIA, et al.,

Additional Sheet Page Four (Statement of Claim con't)

The suit also alleges that officers intentionally denied the prisoners food, drink, access to toilets, and prescribed medications, causing them to suffer hunger and thirst, and the humiliation, discomfort, and stench of having to urinate and defecate in their clothing, or to travel with those who had done so.

   The plaintiff here was a member of the class action lawsuit IN RE:NOCC in which defendant the District and defendant CCA were named defendants. The claims were settled in a pre-trial agreement. Plaintiff was told by the transporting officers on July 2-4, 2001, that since D.C. prisoners like to file lawsuits they deserved to be punished. In Battle, Id., the plaintiff claim that officers repeatedly stated that they were subjecting the prisoners to this treatment because the prisoners had filed a class action lawsuit challenging conditions of their confinement in Youngstown, OH (NOCC). Clearly, the named defendants herein, knew of the conditions that would pose a threat to plaintiff's mental and physical well-being, and chose to ignore them or, in the alternative, perpetrated them intentionally. In either case, the defendants have violated plaintiff's constitutional rights to adequate attention to serious medical conditions and for adequate treatment of the same. Defendant the District and defendant CCA were in possession of plaintiff's medical records and knew that plaintiff would suffer harm and distress from exposure to second-hand smoke during the incident. On information and belief, defendant Transcor was provided with plaintiff's medical record to transport with plaintiff to CADF on July 2, 2001. With due diligence, defendant Transcor would have known of the fact that plaintiff suffers from asthma and would have known the harm that would come from exposure to second-hand smoke in such a close proximity. All of the rights of the plaintiff which were violated under the Eighth Amendment of the U.S. Constitution were clearly established at the time of the bus trip on July 2-4, 2001. As a result, none of the defendants can justly claim immunity.

   Therefore, plaintiff has been deprived of rights, privileges, or immunities secured by the constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535(1981). The Eighth Amendment prohibit punishments that either involve unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime for which a prisoner is incarcerated. Rhodes v. Chapman, 452 U.S. 337, 347(1981). "Combinations of various conditions can give rise to an Eighth Amendment violation where each condition itself would not so rise." Campbell-El v. District of Columbia, 881 F. Supp. 42, 44(D.D.C. 1995)(citing Wilson v. Seiter, 501 U.S. 294, 304-05(1991). In this case, the acts and/or omissions complained of rise to the level of an Eighth Amendment claim when viewed in the totality of the conditions, even if no single violation would otherwise so rise. The conditions complained of herein deprived plaintiff of basic human needs due to circumstances so serious as to be considered "cruel and unusual." See Pryor-El v. Kelly, 892 F. Supp. 261, 266-67(D.D.C. 1995). Further plaintiff alleges that defendants knew of and disregarded the conditions that exposed plaintiff to an excessive risk to health and safety. See Farmer v. Brennen, 511 U.S. 825, 834(1994).