**Exhibit E**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

FEB 1 2007

DPS

ISMAIL ABDUL MALIK,
a/k/a ROY THOMAS

      Plaintiff,

  V.

    :    Civil Action No. 05-CV-1374
    :    (RMC)

DISTRICT OF COLUMBIA, et al.,

      Defendants.

---

## PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS

      Pursuant to Federal Rule of Civil Procedure 34 and the rules of this Court, Plaintiff Ismail Abdul Malik, a/k/a Roy Thomas, pro se, directs the following document requests to Defendants, District of Columbia, Corrections Corporation of America, and Transcor, to be answered and returned, along with responsive documents, to Plaintiff at USP- Big Sandy, P.O. Box 2068, Inez, KY 41224, on or before March 2, 2007, which date is thirty days after service hereof.

### DEFINITIONS

    1. The terms "you," "your," and "Defendants" shall refer to the District of Columbia, Corrections Corporation of America, and Transcor and shall include any predecessors-in-interest, successors-in-interest, present or former affiliates, partners, beneficiaries, employees, agents, servants, representatives, and/or other persons acting or purporting to act on their behalf, including without limitation and attorney employed or retained by or for **DOCKETED**

DATE DOCKETED: 2-2-07
DOCKETED FOR: 2-26-07
REMINDERS: 2-2-07

2. The terms "person" or "persons" shall include any natural person, corporation, partnership, proprietorship, association, joint venture, governmental or other public entity, and all their officials, directors, officers, employees, representatives, and agents.

3. The terms "official," "director," "officer," employee," "representative," or "agent" shall include any natural or corporate person, including any attorney, serving, acting, or being in such capacity(by contract or otherwise)at any relevant time even though such person is no longer in such capacity.

4. The present tense shall be construed to include the past tense and the past tense shall be construed to include the present tense as required by the context to elicit all information discoverable within the broadest scope of these document requests.

5. The singular shall be construed to include the plural and the plural shall be construed to include the singular as required by the context to elicit all information discoverable within the broadest scope of these document requests.

6. "And and "or" have both conjunctive and disjunctive meanings as required by the context to elicit all information discoverable within the broadest scope of these document requests.

7. "Any" and "all" shall mean "each and every".

8. "Copy" shall mean any reproduction, in whole or in part, of an original document and includes, but is not limited to, non-identical copies made from copies.

9. "Document" shall refer to each original and each non-identical copy(whether different from the original by means of notes made on such copy or otherwise) of all forms of retained information,

whether on paper, photograph, magnetic impulse, mechanical or elec-
tronic recording, or any other form, including, without limitation,
all material that is handwritten, typewritten, printed, recorded,
transcribed, punched, taped, photocopied, photostatted, telexed,
telecopied, filmed, recorded on audio, video or computer tape disc,
microfilmed, or other graphic or recorded matter, however denominated
by you, and any drafts, revisions, or amendments thereof, whether
existing in hard-copy, paper format or existing only in electronic
form.

10.  "Communicate" or "communication" shall mean every manner
or means of disclosure, transfer, or exchange of information, and
every such disclosure, transfer, or exchange of information, whether
orally or in a document, and whether face-to-face, by telephone,
mail, electronic mail, wire, telex, telecopy, personal delivery,
or otherwise.

11.  "Meeting" shall mean any assembly, convocation, encounter,
conference or contemporaneous presence of two or more persons for
any purpose, formal or informal, whether or not planned, arranged,
or scheduled in advance.

12.  "Concern," "concerning," or "relating to" shall mean men-
tioning, reflecting, pertaining to, making reference to, describing,
discussing, analyzing, or commenting on a matter, directly or in-
directly, in whole or in part.

13.  A request for documents relating to any communication or
meeting with a corporation, partnership, or other business or govern-
mental entity shall include any communications or meeting with its
officers, directors, controlling shareholders, employees, representa-
tives, agents, and attorneys acting on the entity's behalf.

14. "Occurrence" shall mean any incident or event, especially one that happens without being designed, planned, or expected.

## INSTRUCTIONS

1. Each of the following document requests is continuing in nature. If you obtain any additional responsive documents at any later date, promptly so inform Plaintiff and submit supplemental or amended answers and documents as required by the Federal Rule of Civil Procedure 26(e)(2).

2. Produce all responsive documents in your possession, custody, or control from files that contain responsive documents, wherever located, and whether active, in storage, or otherwise. In compliance with this instruction, the following directions apply:

a. Proved the original of each requested document and all non-identical copies(i.e., all copies that differ in any respect from each other or from the original first produced).

b. Produce all documents and files in the order they appear in the files of the producing party and in a manner that specifies the name, title, and office location of the person from whom the documents were obtained, and the name of any file from which the documents were obtained.

c. For any responsive document that no longer exists or has been lost, destroyed, or temporarily mislaid, furnish the following information: a description of the document including type, title, subject matter, and date; whether it was lost, destroyed, or temporarily mislaid; what efforts were made to locate the document; when and by whom the document was lost, destroyed, or temporarily mislaid; and the number of the request to which the document would be responsive.

-4-

d. If any part of a document is responsive to any request, produce the whole document.

e.  If you maintain requested information on electronic media (including, but not limited to, computer discs or tape), produce both a print-out of the information and a copy of the electronic media with information regarding the program-ming necessary to retrieve the information. For information stored on microfiche, produce a printed copy of the informa-tion.

3.  If you believe that any of the following document requests calls for assertions of a claim of privilege, produce so much of the document as is not included within the privilege claim and set forth with respect to each specific document or portion of document as to which a claim of privilege is asserted, the nature of the privilege claimed(e.g., attorney-client, work product, etc.), a general description of the document or portion of document, the document's author, the complete factual basis for the claim, and each person to whom the document or portion of document has been disclosed. For each document or part of document as to which you claimprivilege, provide mutually agreeable log containing the infor-mation required by the Federal Rule of Civil Procedure 26(b)(5).

4. If for reasons other than a claim of privilege, you refuse to produce dcuments reponsive to any document request, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal.

## SECOND SET OF DOCUMENT REQUESTS

1.    Please provide any reports prepared concerning prisoner receipt, any activities' log on prisoner status report relating to the bus ride from Youngstown, OH. to Florence, AZ. on July 2nd - 4th, 2001.

2.    Provide any photographs, charts, or diagrams of the configuration of the bus used during the occurence.


Respectfully submitted,

ISMAIL ABDUL MALIK, Pro se
a/k/a/ ROY THOMAS
Reg. No. 11340-007
USP - Big Sandy
P.O. Box 2068
Inez, KY  41224


## CERTIFICATE OF SERVICE

This certifies that I have this 26th day of January, 2007 placed a true and exact copy of the Plaintiff's Second Set of Document Requests in the U.S. Mail, First-Class Postage pre-paid, addressed to:

Daniesl P. Struck, Esquire
JONES, SKELTON & HOCHULI, P.L.C.
2001 North  Central Avenue
Suite 800
Phoenix, AZ  85012


Michael P. Bruckheim, Esquire
Asst. Attorney General
for the District of Columbia
441 -4th - Street, N.W.
Sixth Floor South
Washington, D.C.  20001

ISMAEL ABDUL MALIK, pro se
a/k/a ROY THOMAS

**Exhibit F**

**RECEIVED**

FEB 0 2 2007

**TJB**

Ismail Abdul Malik
A/K/A  Roy Thomas
Reg. No. 11340-007
USP - Big Sandy
P.O. Box 2068
Inez, KY.  41224
~~November 20, 2006~~ January 20, 2007

Daniel P. Struck, Esq.
Jones, Skelton & Hocholi, P.L.C.
2901 North Central Avenue
Suite 800
Phoenix, AZ. 85012

**Re:**  Malik v. District of Columbia, et al.,
Civil Action No. 1:05-cv-1374 (RMC)

Dear Mr. Struck:

I am in receipt of your responses to Plaintiff's First Set of Interrogatories and Document Requests.

The responses you have provided are for the most part unresponsive, and your objections are unfounded. I believe that I am entitled to adequate responses to the interrogatories provided to you. I would greatly appreciate it if you would provide additional responses to the following interrogatories, and avoid any need to seek court intervention.

1.)  Interrogatory #1:  I am entitled to know the information concerning the person who is providing the responses.

2.)  Interrogatory #2:  It is obvious that the respondent's employment at the time of the incident is relevant to any possible knowledge or bias.

3.)  Interrogatory #3:  Same as #2 above.

4.)  Interrogatory #4:  The description as "vague, over broad and unduly burdensome" is puzzling to me, because it is a straight forward request. Either you have a record of all persons on the bus ride, or you do not. Additionally, you play word games with the definition of "occurrence", but you seem to overlook the fact that the interrogatory itself narrows the question to July 2nd - 4th, 2001, on the bus ride from Youngstown, Ohio to Florence, AZ.

5.)  Interrogatory #21:  State the response for any person described for whom you can provide an answer.

Daniel P. Struck, Esq.
November 20, 2006
Page Two of Two

## Document Requests

1.) Document Production #1: The District of Columbia (D.C.) claims no liability, the contract says only D.C. can authorize transfer. CCA must have received some documentation to justify transferring plaintiff, send copy or this.

2.) Request for Production #3: The contracts between CCA and the District of Columbia in no way compromise anyone's security and can provide, or lend to discovery of other admissible evidence.


    In conclusion, it is hoped that you will see fit to further supplement your responses to the above. The Plaintiff will comply with your discovery demands and expects the same in return. Thank you for your kind attention in this matter.


                              Sincerely,

                              Ismail Abdul Malik
                              A/K/A Roy Thomas
                              Reg. No. 11340-007
                              USP - Big Sandy
                              P.O. Box 2068
                              Inez, KY. 41224

JAN 26 2007

United States Penitentiary, Big Sandy, KY
P.O. Box 2067, Inez, KY 41224
"The enclosed letter was processed through
special mailing procedures for forwarding to you.
If the writer raises a question over jurisdiction
of this facility, you may wish to return for
clarification. If writer encloses correspondence
to another addressee, please return. DATE:

Ismail Malik
a/k/a Roy thomas
:
IBER: 11340-007
)Y

LEGAL MAIL

Daniel P. Struck, Esq., P.L.C.
Jones, Skelton & Hochuli, Suite 800
2901 North Central Avenue,
Phoenix, Arizona 85012

MAIL

85012+2700-99 C026

**Exhibit G**

# JS&H    JONES, SKELTON & HOCHULI, P.L.C.

TIMOTHY J. BOJANOWSKI
TELEPHONE: (602) 263-7324
FAX: (602) 200-7837
E-MAIL: TBOJANOWSKI@JSHFIRM.COM

2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
PHONE: (602) 263-1700
FAX: (602) 263-1784
WWW.JSHFIRM.COM

February 9, 2007

## TRANSMITTAL OF LEGAL FILINGS

Ismail Abdul Malik
a/k/a Roy Thomas (Reg. No. 11340-007)
**USP BIG SANDY**
P. O. Box 2068
Inez, Kentucky 41224

> **Re:** *Mailk v. District of Columbia, et al.*
> United States District Court for the District of Columbia
> Case No. 1:05-cv-01374 (RMC)

Dear Mr. Malik:

I am in receipt of your January 20, 2007 letter and Second Set of Discovery Requests. While I am happy to discuss our responses with you, and will address each of your concerns in turn, I take umbrage at your implication that we are being evasive or "playing word games." Rather, we are, as required by the Rules of Civil Procedure, answering the interrogatories precisely as they were written, using the definitions and instructions provided.

Interrogatory No. 1 stated "State your full name, address, date of birth, marital status and Social Security number." In your definitions, you specified that the "terms 'you', 'your', and "Defendants" shall refer to the District of Columbia, Corrections Corporation of America, and Transcor [sic] and shall include any predecessors-in-interest, successors-in-interest, present or former affiliates, partners, beneficiaries, employees, agents, servants, Representatives, and/or other persons acting or purporting to act on their behalf, including without limitation any attorney employed or retained by or for them." Thus, your interrogatory as written did not seek to discern the identity of the person providing the responses, but the name and personal information of every employee or agent, without restriction as to time, of the District of Columbia, Corrections Corporation of America and TransCor. Surely you agree that this full scope of information is unduly burdensome to compile and is not relevant to your claims. Moreover, I objected that the interrogatory was vague, since we did not believe that your intended question called for such a broad scope of information. As for your intended inquiry, my paralegal and I prepared the responses based on input from my clients. As you already know how to locate and contact me, I see no relevance in

# JONES, SKELTON & HOCHULI, P.L.C.

Ismail Abdul Malik
February 9, 2007
Page 2

providing my date of birth, marital status or Social Security number, and decline to do so.

Interrogatory No. 2 stated, "By whom are you employed and what were your duties and wages at the time of the occurrence?" Given how you instructed us to construe the definition of "you" along with the definition of "occurrence" as "mean[ing] **any** incident or event, especially one that happens without being designed, planned, or expected," (emphasis added) this interrogatory essentially asks at any point in time, who were the District of Columbia, Corrections Corporation of America, TransCor, their employees, former-employees, and agents, including outside counsel employed by and what was their job responsibilities and wages? An answer to this question seems to require an employment and wage history for every employee past or present of the District of Columbia, CCA, and TransCor as well as anyone who worked for them as a contractor or vendor. Surely, you agree that such a request is overbroad, unduly burdensome to compile and much of the information requested is not relevant to your claims. Moreover, I objected that the interrogatory was vague as we did not believe that you intended to ask such an expansive question. As for your intended inquiry, you may recall that in 2001 I was an attorney involved in the Northeast Ohio Correctional Center litigation. At that time, my paralegal was a high school teacher. Should we learn of other information or that our responses or incorrect, you may rest assured that we will promptly provide you a supplemental response as required by Fed. R. Civ. P. 26(e).

Interrogatory No. 3 stated, "State the duties and responsibilities of your current employment position." Given the definition you instructed us to use to construe the term "your," we interpret this interrogatory as asking for a list of the duties and responsibilities of the District of Columbia, CCA, TransCor, every single one of their employees, past and present, and every single person who has worked as a contractor or vender to the District of Columbia, CCA and/or TransCor. Surely, you must agree that you did not intend to ask such an unduly burdensome question, to which much of the answer is irrelevant to your claims. Likewise, as you know that my paralegal and I prepared the responses in consultation with our clients and that I understand my duty to promptly provide a supplemental response should I learn that any response is incorrect or incomplete, I still do not see how providing you with a list of the "duties and responsibilities of [my] current employment position" is relevant or necessary.

While you may have intended Interrogatory No. 4, which states "Name all eyewitnesses to all or part of the occurence [sic], including all staff and inmates on the bus ride from Youngstown, Ohio to Florence, Arizona on July 2-4, 2001" to be straightforward, the definition you instructed us to use for "occurrence" as "**any** incident or event, especially one that happens without being designed, planned, or expected" (emphasis added), essentially asks us to identify any and all eyewitnesses to everything

1742680.1

## JONES, SKELTON & HOCHULI, P.L.C.

Ismail Abdul Malik
February 9, 2007
Page 3

which happened throughout the course of human history. Thus, I objected that your request was vague, since I knew that you did not intend to ask such an overbroad and unduly burdensome question. Nevertheless, we did provide a comprehensive list of more than 40 eyewitnesses to the July 2-4, 2001 transport. We further note that we provided you with the Bus Activities Log (CCA-IAM 0001 through CCA-IAM 0002) and Prisoner Receipt (CCA-IAM 0003 through CCA-IAM 0005), which provides the identity of all persons on the bus ride.

Interrogatory No. 21 asked us to "State whether you consumed any alcoholic beverages within 8 hours of said occurrence, the place where such alcoholic beverages were obtained, and the nature and the amount thereof." Once again, as instructed, the definitions of "you" and "occurrence" expand that scope of the question to inquire into the alcoholic consumption by the District of Columbia, CCA, TransCor and all of their past and present employees, vendors and contractors at every point in time. Thus, we stand by our objection as stated. Should we learn of any alcohol consumption during the specified 8-hour period before the July 2-4, 2001 bus ride from NOCC to CADC by any TransCor employee on the bus, we believe there to be none, we will promptly provide a supplemental response. We object however, that any question regarding alcohol consumption during the 8-hours <u>after</u> you were discharged at CADC is not relevant to your claims.

In terms of Document Production Request No. 1, I admit that I may not fully understand the question as stated in your letter. Nevertheless, I note that we produced the Transfer Authorization From (attached to the Prisoner Receipt) at CCA-IAM 0004 through CCA-IAM 0005. (We further note, that we have located additional information which we are producing in response to Request No. 1 of your Second Set of Document Requests.) However, we object that information regarding the <u>justification</u> for your transfer is irrelevant, as your claims related to the conditions of your transport, not that you were transported. I expect that any additional information regarding the "justification" for your transfer will be contained either in your D.C. Department of Corrections records or your Bureau of Prisons records; however, since we have not yet received your releases for those records, we are not able to obtain those records.[1] Once we are able to request, and have received those records, rest assured that we will provide you with a copy in a Supplemental Disclosure Statement.

Document Production Request No. 3 requested "all documents that reference in any manner report, records, decision, communications, discussions, directives, hearings or contracts between the District of Columbia and Corrections

---

[1] I understand that due to circumstances beyond your control, you were not able to promptly return the releases and appreciate that you fully intend to provide them to us.

1742680.1

# JONES, SKELTON & HOCHULI, P.L.C.

Ismail Abdul Malik
February 9, 2007
Page 4

Corporation of America to confine and/or transfer D.C. prisoners to any private of federal prison from the years 1997 through 2002. It appears that relevant portions of the contract records you seek are already in your possession, since you attached excerpts of them to your July 11, 2005 Complaint.[2] While you may be correct that the production of portions of the contracts may not constitute a security concern, it is the request for other documents regarding the transfer of D.C. prisoners which do in fact pose a security risk. As you no doubt are aware, commonly, inmates are not advised of their transfer until shortly before the transfer, are not advised of the specific route of the transfer at all, and sometimes are not aware of their destination until the transfer is concluded. These restrictions, are intended to reduce the possibility of escape as well as to protect inmates who are on protective-custody or have separation orders, or who may be threatened by individuals outside the penal system. Moreover, I note that you do not appear to question our other objections that your request is vague, overbroad, unduly burdensome, duplicative, calls for the disclosure of protected private information of other inmates and is not reasonably calculated to lead to the discovery of admissible information.

Furthermore, while I don't believe it is relevant to your claims, I anticipate that there is some statutory, regulatory, or case law regarding the transfer of D.C. inmates to private prisons or federal facilities. Any such documents would be in the public domain, and I know that you have the acumen and ability to perform that legal research. If perchance, the D.C. Statutes and Code of Municipal Regulations are not available in your law library, your counselor or law librarian may be able access them, at no charge, via the internet through www.dc.gov.

I trust that these responses fully address your questions regarding Defendants' responses to your first set of discovery requests. Once again, we will promptly supplement our discovery responses should other relevant information or records be obtained, regarding your transport from NOCC to CADC on July 2-4, 2001, which is responsive to the intended spirit of your requests.[3] However, given the formality of legal proceedings, we are compelled to object for the record to the requests, as written and construed using the definitions you provided.

---

[2] Additionally, although we contend it is irrelevant to your claims, the District of Columbia did produce the Contract for Operation and Management of the Correctional Treatment Facility in response to this request.

[3] Once again, we expect that any such information is likely contained in your D.C. Department of Corrections and/or Bureau of Prisons institutional files or records. Once we receive those records, we will produced a copy to you along with a Supplemental Disclosure Statement.

## JONES, SKELTON & HOCHULI, P.L.C.

Ismail Abdul Malik
February 9, 2007
Page 5


With this letter, I am also transmitting Defendants' Responses Plaintiff's Second Set of Document Requests and Defendants' Responses to Plaintiff's Second Set of Interrogatories.

You will note that all Defendants object to answering any interrogatories in excess of the twenty-five permitted by Fed. R. Civ. P. 33(a) and the Court's November 6, 2006 Scheduling Order, and as a result believe that there is no non-objectionable portion of those interrogatories. Should you disagree on that point and you decide to file a Motion to Compel with the Court, please include a "Meet and Confer Certification" as required by Local Civil Rule 7(m) that "Defendants have advised that they do not consent to this motion nor the relief requested and intend to file an opposition."

Finally, I note that you addressed your last request to my colleague, Mr. Struck. As I am the attorney with primary responsibility for handling this case, I may be able to provide you with faster response, should you address all future correspondence to my attention.

Should you have any questions, or need anything further, please do not hesitate to contact me.

Sincerely,

Timothy J. Bojanowski
For the Firm


MNG:mng
Enclosures: as stated.


1742680.1

**Exhibit H**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ISMAIL ABDUL MALIK, aka ROY THOMAS, DCDC #232011<br><br>            Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, CORRECTIONS CORPORATION OF AMERICA, TRANSCORP<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)    Case No.:    1:03-CV-00944 (RMC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS

Plaintiff Ismail Abdul Malik ("Plaintiff") spends a single page explaining why his Complaint alleging certain constitutional violations should not be dismissed for failure to exhaust his administrative remedies or, in the alternative, why judgment on the pleadings should not be entered. See Plaintiff's Traverse [sic] to Defendants' Motion at 5.[1] Putting aside the paucity of Plaintiff's argument, even that one page does not withstand scrutiny. Although Defendants the District of Columbia, Corrections Corporation of America ("CCA"), and TransCor (improperly identified as "Transcorp") (collectively "Defendants") styled their motion as seeking dismissal on procedural grounds (Plaintiff's failure to exhaust administrative remedies) or, alternatively,

---

[1] A larger portion of Plaintiff's filing is spent repeating his arguments regarding this Court's subject matter jurisdiction, issues that Plaintiff previously argued in his Motion to Remand (filed June 12, 2003) and Motion for an Extension of Time (filed July 24, 2003). Plaintiff alleges Defendants violated his Eighth Amendment rights. Accordingly, this matter was removed properly to this Court based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.

for judgment on the pleadings (Plaintiff's failure to state a claim), it is apparent that judgment on the pleadings should be entered in favor of Defendants. Not only does Plaintiff's Complaint fail to state a claim, but Plaintiff's "Traverse" does not proffer any rationale for why the Complaint should not be denied with prejudice.

Accordingly, judgment should be entered in favor of Defendants.

I.    **JUDGMENT ON THE PLEADINGS SHOULD BE ENTERED IN FAVOR OF DEFENDANTS.**

The entirety of Plaintiff's argument regarding the merits of his claim totals a half-page. See Pl.'s Traverse at 5 ("Argument"). Plaintiff begins with the conclusion that he has stated a claim for violation of his constitutional rights. See id. ("Whether the Plaintiff has stated a claim which comes within the purview of the 8th and 14th Amendments? Plaintiff [sic] answer: Yes!"). In support of that conclusion, Plaintiff cites to Hope v. Pelzer, 536 U.S. 730 (2002), asserting that "[i]n the instant case the conduct of the named defendants comes within the purview of that opinion." Id. That is Plaintiff's entire argument.

Notwithstanding Plaintiff's failure to address any of the arguments raised by Defendants, the one argument Plaintiff does make – that Hope v. Pelzer is dispositive – is wrong. In Hope v. Pelzer, a prisoner filed suit again certain state prison guards, alleging violations of his Eighth Amendment rights. The issue in Hope was whether the guards were entitled to qualified immunity. Hope, 536 U.S. at 733. Thus, Hope is inapposite because it addressed an issue not involved in this case – qualified immunity for individual guards – because Plaintiff's claim in this case is against the entities of the District of Columbia, CCA, and TransCor.

Admittedly, part of the Court's analysis in Hope did include the determination that the prisoner had stated a claim for a constitutional violation. Id. at 738. In that case, the prisoner was handcuffed to a "hitching post" – a rail set at shoulder height – for seven hours, prison

guards made the prisoner take off his shirt while the sun burned his skin, the prisoner was given water only once or twice and was given no bathroom breaks. Id. at 734-35. In addition to the prisoner's exposure to sunburn, dehydration, and muscle aches (from being forced to remain in a standing position with his arms raised in a stationary position for a long period of time), a guard also taunted the prisoner about his thirst: "The guard first gave water to some dogs, then brought the water cooler closer to [plaintiff], removed its lid, and kicked the cooler over, spilling the water onto the ground." Id. at 735. The Court concluded that the handcuffing of the prisoner to the hitching post under those circumstances violated the Eighth Amendment. Id. at 737.

That is not this case. In this case, Plaintiff complains about (1) breathing second-hand smoke during a bus ride; (2) being restrained by handcuffs, a "black box", and shackles during that bus ride, and (3) as a result of being handcuffed and shackled, not being able to use the toilet "individually" during that bus ride. See Complaint, passim. Those allegations fall short of stating a claim under the Eighth Amendment. See Defs.' Motion to Dismiss or, Alternatively, for Judgment on the Pleadings ("Defendants' Motion") at 10-19. Plaintiff fails to allege "a deprivation which amounts to a wanton and unnecessary infliction of pain," Rhodes v. Chapman, 452 U.S. 337, 347 (1981), and that Defendants acted with "deliberate indifference" to inmate health or safety, see Farmer v. Brennan, 511 U.S. 825, 834 (1994). Further, Plaintiff fails to allege a policy or custom of the Defendants that caused Plaintiff's purported injuries giving rise to his claim, which is required when suing a municipality, such as the District of Columbia, or a private corporation that provides services "normally provided" by municipalities, such as CCA and TransCor. See Gabriel v. Corr. Corp. of Am., 211 F. Supp. 2d 132, 137-138 (D.D.C. 2002).

Plaintiff proffers no other arguments in response to Defendants' motion for judgment on the pleadings. For the reasons articulated in Defendants' Motion, judgment should be entered in favor of Defendants.

## II.    AT A MINIMUM, PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES MANDATES DISMISSAL.

Plaintiff raises the novel argument that the exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (1998) ("PLRA"), does not apply where "Plaintiff [sic] Complaint does not challenge a conviction or sentence, or length of time…." See Plaintiff's Traverse at 5. In support of this novel theory, Plaintiff cites to Monroe v. Pape, 365 U.S. 167 (1961), a case that pre-dates the PLRA by thirty-seven years. Plaintiff's argument ignores the plain language of the PLRA, which provides:

> *No action shall be brought* with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*

42 U.S.C. § 1997e(a) (italics added). Further, Monroe does not stand for the proposition cited by Plaintiff. Instead, Monroe addresses the meaning of "under color of" law. See Monroe, 365 U.S. at 169. Finally, Monroe was overruled by Monell v. Dep't of Soc. Servs., 346 U.S. 658 (1978).

Even if Plaintiff were given the benefit of the doubt and his (flatly wrong) argument regarding exhaustion were ignored, the fact remains that Plaintiff did not exhaust his administrative remedies, nor has he alleged otherwise. Defendants' motion to dismiss already has detailed the inadequate allegations contained in Plaintiff's Complaint. Nor is Defendants' motion premised merely on a technical defect – Plaintiff's "Traverse" and the exhibits attached thereto confirm that as a *factual matter* Plaintiff did not exhaust his administrative remedies. Exhibit 5 attached to Plaintiff's brief includes a memorandum from CCA. It is dated July 18,

2001, and was received by Plaintiff no later than August 15, 2001. (Plaintiff's constitutional rights allegedly were violated on or about July 2, 2001. See Complaint at 2.) The memorandum instructs Plaintiff to submit a grievance to TransCor, the company who provided the bus transportation, and includes an address and contact person. Plaintiff did not – and does not allege otherwise – that he even contacted TransCor, much less exhausted his administrative remedies. According to the documents submitted by *Plaintiff*, he has not exhausted his administrative remedies. Therefore, Plaintiff's Complaint – at a minimum – should be dismissed for failure to exhaust his administrative remedies.

## CONCLUSION

For the foregoing reasons and those contained in Defendants' Motion for Judgment on the Pleadings, the Court should grant Defendants' Motion for Judgment on the Pleadings or, at a minimum, dismiss Plaintiff's Complaint for failure to exhaust his administrative remedies.

Dated:  August 25, 2003                    Respectfully submitted,


                                           /s/_____
                                           Elizabeth Sarah Gere (D.C. Bar No. 186585)
                                           Paul C. Vitrano (D.C. Bar No. 464223)
                                           Erik M. Pritchard (D.C. Bar No. 474293)
                                           2001 K Street, N.W.
                                           Washington, D.C.  20006-1040
                                           (202) 662-2000
                                           Facsimile: (202) 662-2190

                                           *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of August, 2003, I caused a true and correct copy of

Defendants' Reply in Support of Motion to Dismiss for Failure to Exhaust Administrative

Remedies or, in the alternative, for Judgment on the Pleadings to be deposited, postage pre-paid,

in the United States Mail for service upon the following:

> Ismail Abdul Malik, #11340-007
> a/k/a Roy Thomas
> U.S. Penitentiary
> P.O. Box 150160
> Atlanta, GA  30315

/s/ _____
Erik M. Pritchard

**Exhibit I**

Ismail Abdul Malik,
a/k/a Roy Thomas
Reg. No. 11340-007
USP- Big Sandy
P.O. Box 2068
Inez, KY 41224

**RECEIVED**

March 5, 2007

MAR 13 2007

**TJB**

Timothy J. Bojanowski, Esq.
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue Suite 800
Phoenix, Arizona 85012

Re: <u>Malik v. District of Columbia, et al.</u>,
    United States District Court For the District of Columbia
    Civil Action No. 05-1374(RMC)

Dear Mr. Bojanowski:

     I am in receipt of the attachments to your Motion For Judgment
on the Pleadings, which you enclosed with your letter to me of February
14, 2007.  I write in regards to your invitation to me to contact you
should I need anything else.

     In fact, I need a copy of the company grievance policy for Trans-
Cor. I would greatly appreciate a copy of the above-requested as soon
as is feasible, in order that I may timely file my opposition to your
filings.

     Thank you for your assistance in the past, and a prompt response
in this matter would be greatly appreciated also.

                                        Sincerely,

                                        Roy Thomas

                                        ISMAIL ABDUL MALIK,
                                        a/k/a ROY THOMAS
                                        Reg. No. 11340-007

**Exhibit J**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Robert J. Camm, et al.,            )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )    Civil Action No. 85-3844
                                   )
Ralph E. Kennickell, Jr., et al.,  )
                                   )
          Defendants.              )
_____  )


OPINION OF CHARLES R. RICHEY
UNITED STATES DISTRICT JUDGE

INTRODUCTION

Plaintiffs' complaint, filed pursuant to 28 U.S.C. §§ 1331 and
1332, alleges that defendants have committed several common law
torts and tortuously violated plaintiffs' constitutional rights.
Specifically, plaintiffs allege that defendants have committed
common law libel, slander, defamation, and placed plaintiffs in a
false light.  First Amended Complaint ¶ 1.1  They also claim that
defendants have violated plaintiffs' first amendment rights of
privacy, fifth amendment interest in reputation, and fifth
amendment due process interests.  These claims arise out of
defendants' suspension and debarment of plaintiff Camm and of a
contract between plaintiff Quadra Graphics, Inc., and the
Government Printing Office, of which defendants are officers or
employees.

In 1979, the Inspector General of the Government Printing Office
(hereafter GPO) began a five-year investigation of improprieties
in the award of contracts by the Philadelphia Regional Printing
Procurement Office (hereafter PRPPO), an arm of the GPO.
Plaintiffs were among the targets of that investigation.

At some point, plaintiffs' conduct became the concern of a grand
jury investigation.  The parties before this Court do not state
when this occurred.  In 1983, GPO investigators obtained
information that plaintiffs had given food, drink, money to
various PRPPO officials and employees.  The parties dispute
whether this information was obtained in violation of grand jury
secrecy requirements or through an independent investigation.

Plaintiffs claim that, at some point prior to June 18, 1984, the
Department of Justice decided not to prosecute them and informed
the GPO of that decision.  On June 18, 1984, plaintiff Camm was
suspended and disqualified from doing business with the GPO
because suspected of bribery.  Plaintiffs also claim that
defendants subsequently informed a member of Congress, the Hon.
James J. Florio, that plaintiff Camm might be subject to
prosecution.

On October 9, 1984, plaintiff Camm was sent a "Notice of Proposed
Debarment."  After a series of negotiations between plaintiff
Camm and defendants, plaintiff Camm was debarred from doing
business with GPO for one year.  That debarment was announced,

along with the alleged reasons for it, in a press release to the general public and various news organizations.  Shortly thereafter, plaintiffs filed this suit.

Before this Court are defendants' motion to dismiss this action, pursuant to Fed. R. Civ. P. 12 (b) (1), (b) (2), (b) (4), (b) (5), and (b) (6), or, in the alternative, for Summary Judgment.  Also before the Court are plaintiffs' opposition to these motions and plaintiffs' motions for discovery pursuant to Fed. R. Civ. P. 56(f).  This Court will grant defendants' motion to dismiss plaintiff's common law claims and all but two of the constitutional tort claims.  The Court will deny plaintiffs' motion for Rule 56(f) discovery.  Finally, the Court will grant defendants' motion for summary judgment as to one of the remaining constitutional tort claims and will deny summary judgment as to the other.

THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION.

Defendant question this Court's subject matter jurisdiction over this action and move to dismiss plaintiffs' complaint under Fed. R. Civ. P. 12 (b) (1).  The Court finds that it has subject matter jurisdiction and will deny defendants' motion.

Defendants do not elaborate where plaintiffs' jurisdictional allegations fail.  Nor do they supply affidavits attacking the Court's jurisdiction over this action.  As such, this Court must assume that defendant's motion is directed solely at the language of the pleadings.  5 C.A. Wright and A. Miller, Federal Practice and Procedure:  Civil § 1350 (1969 and Supp. 1986).

Plaintiffs brought this action under 28 U.S.C. §§ 1331 and 1332.  First Amended Complaint ¶ 1.  Plaintiffs allege that defendants, all federal officials, deprived them of their constitutional rights while action under color of their authority.  Id. at ¶¶ 1, 48.  Such a claim constitutes a federal question whose validity this Court may decide.  See, Bivens v. Six Unknown named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395; Davis v. Passman, 442 U.S. 228 (1980); Doe v. United States Department of Justice, 753 F.2d 1902, 1104 (D.C. Cir. 1985).

Plaintiffs also claim diversity jurisdiction.  They allege that they are citizens of New Jersey and Pennsylvania, that all defendants are citizens of other states, and that the amount in controversy exceeds $10,000.  First Amended Complaint ¶¶ 1, 2, 4.  Defendants have not controverted these claims, and, having no reason to doubt them, the Court must accept these allegations as true.  As the jurisdictional allegations of the complaint are complete, sufficient, and uncontradicted, the Court must deny defendants' motion to dismiss for want of subject matter jurisdiction.  5 Federal Practice and Procedure at § 1350.

THIS COURT HAS IN PERSONAM JURISDICTION OVER ALL DEFENDANTS.

Defendants have also moved to dismiss this action under Fed. R. Civ. P. 12 (b) (2).  They challenge this Court's in personam jurisdiction over all defendants under the District of Columbia long-arm statute.  This Court rejects this argument and finds that it has jurisdiction over all defendants.

The District of Columbia "long-arm" statute establishes the conditions under which service of process may be made outside the District of Columbia.  That statute applies to actions filed in

this Court.  Fed. R. Civ. P. 4(e); Akbar v. New York Magazine,
490 F. Supp. 60, 63 (D.D.C. 1980).  It provides that, in
pertinent part, this court "may exercise personal jurisdiction
over a person, who acts directly or by an agent, as to a claim
for relief arising from the person's...causing tortious injury in
the District of Columbia by an act or omission in the District of
Columbia."  D.C. Code Ann. § 13-423(a) (3) (1981).

Thus, to meet the statute, plaintiffs must allege an injury in
the District of Columbia that was caused by defendants' acts or
omissions in the District of Columbia.  This injury, however,
need not have caused pecuniary damage here.  Aiken v. Lustine
Chevrolet, Inc., 392 F. Supp. 883 (D.D.C. 1975).  Most important
for this case, a tort committed in the District of Columbia that
affects a business interest or reputation in the District
constitutes an "injury in the District of Columbia" under the
terms of the long-arm statute.  Akbar v. New York Magazine, 490
F. Supp. at 64.

Defendants admit that the allegedly defamatory press release was
issued in the District of Columbia.  Defendants' Memorandum of
Law in Support of Their Motion to Dismiss or for Summary Judgment
7 n. 3.  Plaintiffs allege, and defendants do not dispute, that
they solicit printing contracts from "various executive
agencies," among them the Government Printing Office.  First
Amended Complaint ¶ 2.  The contract suspension and the allegedly
defamatory press release could credibly, as plaintiffs assert,
have injured their trade or business.  Moreover, plaintiff's
government contracts are approved or executed at least in part in
the District of Columbia, see First Amended Complaint ¶ 43.

Taken together, these facts and allegations show that the alleged
torts affected plaintiffs' business interests in, among other
places, the District of Columbia and therefore injured plaintiffs
in the District of Columbia.  Thus, plaintiffs have met the
requirements of D.C. Code Ann. § 13-423(a).  Akbar v. New York
Magazine, 490 F. Supp. at 64.

SERVICE OF PROCESS WAS PROPERLY EFFECTED.

Defendants also ask to dismiss three defendants for insufficiency
of process and service of process, pursuant to Fed. R. Civ. P. 12
(b) (4) and (b) (5).  The Court must reject these motions.

Fed. R. Civ. P. 12 (b) (4) contemplates a challenge to the
content or form of a summons.  5 Federal Practice and Procedure
at § 1353.  Defendants do not specify where defects in the
content or form of the summons allegedly lie.  Without such
allegations, the Court may not grant a 12 (b) (4) motion.  Id.

The 12 (b) (5) motion is properly stated.  Defendants claim that
an unauthorized agent accepted service by certified mail on
defendants Kennickell, McMahon, and Peel.  Were this the only
service effectuated, these defendants would have to be dismissed
from this action.  Under Fed. R. Civ. P. 4(d), service accepted
by an unauthorized agent is ineffective.  4 Federal Practice and
Procedure:  Civil § 1097 (1969 and Supp. 1985).

The Court's records show that plaintiffs personally re-served
defendant McMahon on May 7, 1986, and defendants Kennickell and
Peel on May 8, 1986.  This cures any defect in the earlier-
attempted service.  Maggette v. Dalsheim, 709 F.2d 800, 803 (2d
Cir. 1983); Myers v. John Deere Ltd., 683 F.2d 270 (7th Cir.

1982); Cahill v. St. Mary's Hospital of Brooklyn, 20 F.R.D. 103, 103 (E.D.N.Y. 1956). Consequently, the Court finds that service of process has been properly effected denies the 12 (b) (4) and (b) (5) motions.

THIS COURT MUST DISMISS ALL BUT TWO COUNTS OF PLAINTIFFS' COMPLAINT

Defendants have moved, under Fed. R. Civ. P. 12 (b) (6), to dismiss plaintiffs' complaint for failure to state a claim. The only issue in such motions is whether the complaint, which must be construed most favorably towards the plaintiff and whose allegations must be regarded as true, states a claim for which this Court may grant relief. 5 Federal Practice and Procedure at § 1357. The court is obliged to determine only if the allegations provide for relief under any possible legal theory. Adams v. Bell, 711 F.2d 161, 187 n. 89 (D.C. Cir. 1983), cert. denied, 465 U.S. 1021 (1984).

Given this liberal standard, the Court cannot say that all of plaintiffs' claims must be dismissed. The Court will, however, grant defendants' motions with respect to the common law claims and to the constitutional tort purported to arise out of alleged violations of grand jury secrecy requirements. The court will deny the motion with respect to plaintiffs' claims that their fifth amendment interests in due process and reputation were violated.

1. The common law claims.

Plaintiffs have alleged common law libel, slander, defamation and false light as a result of the press release issued by defendants. First Amended Complaint ¶ 1. Intentional and malicious injury to business reputation is hornbook defamation. See, 2 F.V. Harper, F. James, Jr. & O.S. Gray, The Law of Torts § 5.12 (2d ed. 1986); Restatement (Second) of Torts § 573, 192-95 (1977); see also, Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., U.S. , 105 S. Ct. 2939 (1985). Defendants do not deny that plaintiffs' business reputation may have been harmed by their actions. Nor do they address whether their acts placed plaintiffs in a false light. Instead, defendants assert that absolute or good faith immunity insulates them from liability for any common law torts that may have occurred.

Federal officials are absolutely immune for common law torts arising from allegedly libelous and malicious statements made within the "outer perimeter" of their duties. Barr v. Mateo, 360 U.S. 564, 575 (1959); Semi v. United States, 617 F.2d 755, 770 (D.C. Cir. 1979). Barr, like the instant case, involved an allegedly defamatory press release. There, the Supreme Court found that, despite allegations of malice, issuance of the press release was within the "outer perimeter" of an official's duties and therefore within the ambit of absolute immunity. 360 U.S. at 575. That rule equally applies here to deny plaintiffs recovery on the common law claims, and, as a result, defendants' motion to dismiss those claims must be granted.

2. The constitutional tort claims.

Remaining for the Court to consider are plaintiffs' constitutional tort claims. Plaintiffs allege that defendants committed three violations of plaintiffs' constitutional rights: violation of their first amendment rights by misuse of secret

grand jury information; violation of their fifth amendment
interests in reputation; and violation of their fifth amendment
interests in proper procedure before the suspension of their
government contract.

The threshold requirements of a constitutional tort claim are
clear.  Under the doctrine enunciated in Bivens v. Six Unknown
Named Agents of Federal Bureau of Narcotics and refined by its
progeny, a plaintiff must allege deprivation of a constitutional
right as a result of unconstitutional conduct by a federal
official acting under color of his authority.  See Bivens, 403
U.S. 388 (1971); see also, e.g., Davis v. Passman, 442 U.S. 228
(1979); Dellums v. Powell, 566 F.2d 167 (D.C. Cir. 1977), cert.
denied 438 U.S. 916 (1978).  To meet this standard, plaintiff
must isolate the precise constitutional violation with which each
defendant is charged and must allege facts that constitute that
specific deprivation.  Baker v. McCollum, 443 U.S. 137, 140
(1979); Paul v. Davis, 424 U.S. 693, 697 (1976);2 Doe v. District
of Columbia, 697 F.2d 1115, 1123 (D.C. Cir. 1983).

Defendants first argue that plaintiffs' claims are insufficiently
specific to sound in constitutional tort.  The Court disagrees.
The complaint specifies that ᶦ"each and every defendant."  First
Amended Complaint ¶ 20.  Thus, contrary to defendants'
assertions, the complaint does not make "generalized assertions"
but avers that all defendants participated in the alleged acts,
which themselves are as detailed as the rules of pleading
require.  See, e.g., Conley v. Gibsom, 355 U.S. 41, 45-46 (1957);
Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C. Cir. 1983).
Plaintiffs may face grave difficulties proving that all
defendants were so involved, but that does not render their
complaint deficient.

Defendants also maintain that, even if the complaint is
sufficiently specific, the Court may not grant relief because
plaintiffs' allegations fail to articulate a claim for a
constitutional tort.  The court agrees that it must dismiss
plaintiff's attempt to base a Bivens action on alleged misuse of
grand jury information.  The Court will not, however, grant
defendants' motion with respect to the fifth amendment claims.

Plaintiffs argue that defendants' alleged misuse of grand jury
information violates plaintiffs' first amendment interests in
privacy.  The Supreme Court has recently implied that
constitutional tort actions may be grounded on first amendment
violations for which the injured party would be entitled to
compensatory damages.  Memphis Community School District v.
Stachura, U.S. , 106 S. Ct. 2537 (1986).  This circuit has
long recognized that the principles set forth in Bivens
extended to violations of a person's First Amendment rights.
Dellums v. Powell, 566 F.2d 167, 194-96 (D.C. Cir. 1977),
cert. denied, 438 U.S. 916 (1978).  But no cognizable claim
undergirds plaintiffs' efforts to predicate a Bivens action
on alleged misuse of grand jury information.

The secrecy with which Fed. R. Crim. P. 6(e) argues grand jury
proceedings is integral to our criminal justice system.  It helps
ensure that only those against whom there is substantial,
trustworthy, and untainted evidence will be indicted.  United
States v. Sells Engineering, 463 U.S. at 424; Douglas Oil Co. of
California v. Petrol Stops Northwest, 441 U.S. 211, 219 (1979).
That secrecy, however, is not a constitutional demand but a
creature of the Federal Rules of Criminal Procedure.  See, e.g.

United States v. Sells Engineering  U.S. at 425; Murphy Federal Bureau of Investigation, 490 F. Supp. 1138, 1140 (D.D.C. 1980); Pakistan International Airlines Corp. v. McDonnell Douglas Corp., 94 F.R.D. 566, 567 (D.D.C. 1982).  As such, its breach is not a constitutional violation, and it therefore is not a proper predicate for a constitutional tort claim.

This Court is not untroubled by the possibility that a misguided government official could escape penalty for intentional malicious breach of the secrecy requirement.  While such breaches are, in the experience of this and apparently other Courts, exceptionally rare, they ought not to go unpunished.3  But a constitutional tort action is not the proper (or even permissible) form of redress.  This Court must grant defendants' motion to dismiss plaintiffs' claim that a constitutional tort arose from defendants' alleged misuse of grand jury information.

Plaintiffs are more successful with respect to their claims for tortious violation of their fifth amendment interests.  Plaintiffs allege that the contract suspension process deprived them of their constitutional liberty interests.  They also allege that defendants infringed their liberty interest by stigmatizing plaintiffs in a manner that affects their profession.  First Amended Complaint at ¶ 49(h).

Violation of due process rights can give rise to a constitutional tort.  Davis v. Passman, 442 U.S. 228 (1970); Doe v. Department of Justice, 753 F.2d at 1104.  The due process guarantees required in suspension proceedings against government contractors are clear.  Due process demands that a party to a suspension proceeding receive prior notice detailing the charges against him and be provided an opportunity to respond.  Old Dominion Dairy v. Secretary of Defense, 631 F.2d 953 (D.C. Cir. 1980).  Plaintiffs contend that defendants did not afford them adequate notice prior to suspension of their contract.  First Amended Complaint ¶¶ 39, 40.  As such, the Court may grant relief on this claim and may not dismiss it.

Plaintiffs' claim of stigmatization could also support a constitutional tort action.  Injury to reputation, when coupled with some tangible change in status, can trigger a liberty interest that requires provision of due process.  Paul v. Davis, 424 U.S. at 694; Doe v. Department of Justice, 753 F.2d at 1105.  Suspension of plaintiffs' government contract, together with the alleged foreclosure of other business opportunities, Complaint at ¶ 43, constitutes a change in status sufficient to give rise to the liberty interest.  Id.

Plaintiffs' assertion that defendants unjustly stigmatized plaintiff Camm could therefore be read to articulate a claim for which this Court could grant relief.  In consequence, the Court must deny defendants' motion to dismiss this claim as well.

PLAINTIFFS HAVE NOT SHOWN A NEED FOR DISCOVERY TO OPPOSE DEFENDANT'S SUMMARY JUDGMENT MOTION.

Defendants filed their Motion to Dismiss or for Summary Judgment on March 5, 1986.  On April 25, 1986, plaintiffs submitted their "Answer to Defendants (sic) Motion for Summary Judgment or to Dismiss," along with a lengthy Statement of Material Facts in Dispute, nineteen evidentiary exhibits, and one affidavit.  Despite this extensive proffer of evidence that plaintiffs believe demonstrates disputes over material facts, on July 23,

1986, plaintiff moved for discovery pursuant to Fed. R. Civ. P. 56(f).

Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56(f) is infused with a spirit of liberality. Wallace v. Brownell Pontiac-GMC Company, Inc., 703 F.2d 525, 527 (11th Cir. 1983). Consequently, plaintiffs' failure to provide affidavits detailing the need for and nature of the proposed discovery would not necessarily bar a 56(f) motion that otherwise seemed justified. See, e.g., Littlejohn v. Shell Oil Co., 483 F.2d 1140, 1106 (5th Cir.), cert. denied, 414 U.S. 1116 (1973). Unfortunately for plaintiffs, they have hardly shown a need for gathering additional information.

Plaintiffs state that "their answer to Defendant (sic) motion for summary judgment is sufficient......" Plaintiffs' Memorandum of Law in Support of Plaintiff's (sic) Motion for Discovery Pursuant (sic) to Rule #56 (f) 1; see also, Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Discovery Pursuant (sic) to Rule #56 (f) 1. Thus, plaintiffs' belief that they have documented "facts essential to justify [their] opposition" is obvious. Nonetheless, they ask for apparently unlimited discovery to supplement their answer in case this Court is not convinced that their opposition is justified. Plaintiffs' Memorandum of Law at 1; Plaintiffs' Reply at 1.

To grant plaintiffs' motion would be to the purpose of Rule 56(f). Under the Federal Rules, a party who has had a reasonable opportunity to prepare his case may not plead ignorance of the facts that would support his Opposition. See, 10A Federal Practice and Procedure at § 2741 (1983). Instead, a respondent to a summary judgment motion must either present affidavits opposing a summary judgment motion or explain his inability to do so. United States v. General Motors Corp. 518 F.2d 420, 442 (D.C. Cir. 1975). He may not submit a bevy of exhibits, bill them a sufficient answer to a summary judgment motion, and three months later petition for additional discovery to stave off a potentially adverse ruling.

There is a second ground for denying plaintiffs' motion. In a recent case, the Court of Appeals for this Circuit summarized the burden that a Rule 56(f) movant bears. He must "show...the trial court what facts he hopes to discover and what reason justifies his inability to produce them on the motion." Hotel & Restaurant Employees Union, Local 25, et. al., v. Attorney General of the United States, No. 84-5859, slip op. at 22-23 (Oct. 31, 1986) (citing Exxon Corp. v. FTC, 633 F.2d 120, 126-27). Plaintiffs' motion does not even attempt to meet this burden. As such, the Court must deny their motion for additional discovery.

DEFENDANTS' SUMMARY JUDGMENT MOTION MUST BE GRANTED IN PART AND DENIED IN PART.

The Court has dismissed all of plaintiffs' claims save for the

constitutional torts allegedly arising out of defendants'
stigmatization of plaintiffs and out of the suspension process.
Defendants have moved for summary judgment on these claims and
advance two arguments to support that motion.  First, they submit
that the material facts in this case are undisputed and the law
commands judgment in defendants' favor on those facts.  They also
argue that, even if this Court finds a factual dispute,
defendants' absolute or qualified immunity compels a finding that
defendants are not liable.  The Court will grant the motion as to
the stigmatization claim and deny it as to me claim arising out
of the suspension process.

Only if no material facts are disputed is summary judgment
appropriate.  International Union, United Automobile, Aerospace
and Agricultural Implement Workers of America, Inc., et al., v.
National Right to Work Legal Defense and Education Foundation, et
al., 781 F.2d 928, 932 (D.C. Cir. 1986).  Regardless of any
factual dispute, immunity may appropriately be determined on
summary judgment.  Harlow v. Fitzgerald, 457 U.S. 800, 816
(1982); Gray v. Bell, 712 F.2d 490, 496 (D.C. Cir. 1983), cert.
denied, 465 U.S. 1100 (1984).

The parties agree on the material facts with respect to
plaintiffs' stigmatization claim.  Specifically, defendants'
questioning of plaintiffs' business integrity, and the alleged
stigma that resulted from defendants' statements, and hampered
plaintiffs' opportunity to compete for and obtain government
contracts.

The Court need not consider whether this stigma was sufficient to
invoke due process guarantees.  Even if it were, plaintiffs would
be entitled only to a meaningful opportunity to clear their
names.  Id. at 1111-12; Old Dominion Dairy Products, Inc. v.
Secretary of Defense, 631 F.2d at 963-65.  Plaintiffs have
already participated in hearings and conferences at which they
presented evidence intended to convince defendants of plaintiffs'
untainted business record.  E.g., Plaintiffs' Exhibit 17,
Defendants' Exhibits 4, 9.  Due process requires no more.  Codd
v. Vegler, 429 U.S. 624, 627 (1977); Doe v. Department of
Justice, 753 F.2d at 1112-14.  In consequence, the stigmatization
claim does not amount to a constitutional tort, and defendants
are entitled to summary judgment with respect to that claim.

Defendants' argument fares worse with respect to the suspension
hearing.  Due process demands that a party to a suspension
proceeding receive notice detailing the charges against him and
be provided an opportunity to respond.  Old Dominion Dairy v.
Secretary of Defense, 631 F.2d 953.  Unless the government can
show why it was impossible to do so, that notice must be provided
to a government contractor before a suspension of longer than one
month occurs.  Id. at 966-67.  If notice is not so provided, the
contractor's fifth amendment interest are violated and, under the
doctrine established by Bivens and Davis v. Passman, a
constitutional tort may have occurred.

Plaintiffs maintain that their contract with the Government
Printing Office was suspended for more than one month without
prior notice.  Notice of Suspension, Plaintiffs' Exhibit 3; Camm
Affidavit, Plaintiffs' Exhibit 13, at 6.  Defendants do not
controvert this claim.  See, Defendants Exhibit 7.  Nor do they
aver that it would have been impossible to provide plaintiffs
prior notice or detailed notice and a hearing when it was clear
that the suspension would exceed one month.  As such, the

material facts surrounding plaintiffs' suspension hearing are not
undisputed.

Ordinarily, existence of such a factual dispute would by itself
defeat a summary judgment motion.  John Curry Skating Co. v. John
Curry Skating Co., 626 F. Supp. 611, 616 (D.D.C. 1985).  Here,
however, defendants also argue that summary judgment is
appropriate regardless of any factual controversy because their
acts are entitled to absolute or qualified immunity.

As this Court has made clear, plaintiffs have successfully
asserted one claim that sounds in constitutional tort.
Defendants, who do not serve the government in the high-ranking
and narrowly defined positions to which absolute immunity may be
accorded, may claim only qualified immunity for any tort that may
have occurred.  Butz v. Economou, 478 U.S. 478 (1978); Gray v.
Bell, 712 F.2d at 497; Sami v. United States, 617 F.2d 755, 768
(D.C. Cir. 1979).

The Supreme Court has recently clarified the standard governing
qualified, or "good faith," immunity.  Under Harlow v.
Fitzgerald, 457 U.S. 800, mere allegations of malice cannot
defeat an immunity claim.  Id. at 817-18.  Instead, "government
officials performing discretionary functions generally are
shielded from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which are reasonable person would have
known."  Id. at 818 (emphasis added).

Horlow's objective test allows this Court to examine only whether
defendants' alleged conduct violated clearly established law of
which a reasonable person would be aware.  See also, Mitchell v.
Forsyth, U.S., 105 S. Ct. 2806, 2816 (1985).  A government
contracting agent is expected to be aware of the clear
constitutional standards surrounding the suspension process.
Old Dominion Dairy v. Secretary of Defense, 631 F.2d at
968-69.  If defendants suspended plaintiffs' contract without
prior notice, could have provided the required notice, and the
suspension lasted longer than one month, their conduct would
indeed have violated "clearly established law" and thereby lost
its ordinary shield.

Consequently, this Court finds that there is an issue of fact as
to the due process protections surrounding plaintiffs'
suspension.  It further finds that, should these facts support
relief for plaintiff, the Court could not accord defendants'
action immunity.  As such, the court must deny summary judgment
as to this element of plaintiffs' complaint.

CONCLUSION

The court will deny defendants' motion to dismiss plaintiffs'
complaint under Fed. R. Civ. P. 12 (b) (1), (2), (4), and (50).
It will grant defendants' 12 (b) (6) motion to dismiss
plaintiffs' claim of common law torts and tortious violation of
plaintiffs' purported constitutional rights in grand jury
secrecy.  The Court will deny plaintiffs' motion for discovery
under Fed. R. Civ. P. 569(f).  The Court will grant defendants'
motion for summary judgment as to plaintiffs' stigmatization
claim but will deny the motion as to plaintiffs' constitutional
tort claim of injury from alleged improprieties surrounding
suspension of plaintiff's contract.  That is the only claim
remaining in this case.

November 3, 1986

CHARLES R. RICHEY
UNITED STATES DISTRICT JUDGE

———————————

1  Plaintiffs' complaint also states that it is "brought on the
basis" of conspiracy and a "privacy right" tort.  First Amended
Complaint ¶ 1.  The Court cannot discern any conspiracy count or
allegations amounting to a conspiracy count in plaintiffs'
complaint.  Nor can the Court divine any allegations of common
law tort resulting from alleged intrusions into plaintiffs'
privacy.

2  Baker v. McCollum and Paul v. Davis  are not Bivens actions
but arise under § 1983.  Their doctrine is nonetheless applicable
to Bivens claims, as the Supreme Court has made clear that Bivens
actions are in most respects identical to § 1983 claims.  Carlson
v. Green, 446 U.S. 14, 18-25 (1980).  Differences between the two
are not relevant to this action.  E.g., Monell v. Department of
Social Services, 436 U.S. 658 (1978) (respondeat superior applies
in § 1983 suits but not in Bivens claims); Robertson v. Wegman,
436 U.S. 584 (1978) (survivorship problems different).

3  There are, of course, sanctions designed to protect against
breaches of grand jury secrecy.  For instances, a court may
enjoin unauthorized use of disclosure of grand jury information.
United States v. Sell Engineering, 463 U.S. 418 (1983); Fleet
National Bank v. Export-Import Bank of the United States, 612 F.
Supp. 859, 867-68 (D.D.C. 1985).  Moreover, Rule 6 (e) (2) itself
provides that knowing unauthorized disclosure of information
before the grand jury in punishable as contempt of court.

**Exhibit K**

**RECEIVED**

Ismail Abdul Malik                                    MAR 1 3 2007
a/k/a Roy Thomas
USP- Big Sandy                                           **TJB**
P.O. Box 2068
Inez, KY 41224

February 21, 2007

Timothy J. Bojanowski, Esq.
JONES, SKELTON & Hochuli, P.L.C.
290I North Central Avenue
Suite 800
Phoenix, AZ 85012

Re: Malik v. District of Columbia, et al.,
      United States District Court
      Civil Action No. I:05-cv-l374(RMC)

        I am in receipt of your letter of  February 9, 2007, and your responses to my Second set of
Interrogatories and Document Requests.  As I am certain you are aware, I am not trained in the law. I am
being assisted in this case be a fellow inmate.  On the other hand, you are a skilled, experienced liti-
gator, and you are trained in the law. You also have at yur availability all the resources of your law firm,
colleagues, and the Attorney General's Office of the District of Columbia.

        As a result, I know that I would be senseless to attempt to debate with you concerning the meanings
of the words I included in the definitions that preceded my interrogatories and document requests. However, I
would be remiss to fail to present my objections to your interpretation of and responses to, my discovery
demands.

        In your February 9, letter you go to great length to distort the meaning of terms in my discovery
requests.  In this regard:

        Interrogatory No. 1 is very simple, and to the point.  If a particular person answers the interrogatory,
then it applies to that person, **not any others.** Likewise, you make fun of Interrogatories  Nos. 2 & 3, when
the query applies to the person who is providing the response. Interrogatory No. 4, asks about the incident
that forms the basis of the complaint and I am sure you know that discovery can only be had on relevant
issues, not any occurrence "throughout the course
of human history."

        In terms of Document Request No. 1, the justification for my transfer is very relevant since the
District  of Columbia has claimed that it is not liable, due to CCA, transferring me, and CCA using its transport
agent.

Regarding Document Request No. 3, I am only asking for which contract was in effect, between the District and CCA, for the listed years. You are correct , in saying that I submitted excerpts from contracts however, I have no way of knowing if or when, any superseding contract may have been agreed upon. Your footnote #2, points out another reason for my request: you did send a copy of a contract for Correctional Treatment Facility(CTF), however I was never confined at CTF and none of the events complained of took place at CTF.

I am aware of D.C. Codes and the statutory authority given to the D.C. City Council, however officials at this federal prison will not utilize their resources to assist me with preparations for my civil trial. For your knowledge, I noticed the limit on the number of interrogatories, however since you only repsonded to a third of the requests, I felt I still had more to use.

Finally, if you desire to speak with me concerning any of these matters, I will gladly speak with you, along with the inmate who is assisting me.  This would be easily facilitated if you will call the prison(606-433-2400)and schedule a day and time that your call can be returned. You realize that if we cannot come to an agreement on these issues, then my only recourse will be to take them to the Court.  My Unit Manager here is Mr. Fazenbaker.

Sincerely,

ISMAIL ABDUL MALIK,
a/k/a ROY THOMAS
Reg. No. 11340-007
USP- Big Sandy
P.O. Box 2068
Inez, KY 41224

MAR 0 9 2007

**United States Penitentiar... Big Sandy, KY...**
P.O. Box 2067, ...
"The enclos... ...gh
special m... ...rding to you.
If the ... ...over jurisdiction
of th... ...y wish to return for
c... ...ter encloses correspondence
to another addressee, please return.  DATE:

*Ismail Abdul Malik*
ME: *a/k/a Roy Thomas*
UMBER: *11340-007*

.NDY
8
224





ASHLAND, KY
PM
09 MAR 2007

*Timothy J. Bojanowski, Esq.*
*Jones, Skelton & Hochuli, P.L.C.*
*2901 North Central Avenue*
*Suite 800*
*Phoenix, Arizona 85012*