**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ISMAIL ABDUL MALIK, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 05-1374 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | : |
| Defendants. | : |

**MEMORANDUM OPINION**

Plaintiff brings this civil rights action against the District of Columbia, the Corrections Corporation of America ("CCA"), and TransCor[1] for alleged violations of rights protected by the Eighth Amendment to the United States Constitution that occurred during a 40-hour bus ride from CCA's Northeast Ohio Correctional Center ("NEOCC") in Youngstown, Ohio, to its Central Arizona Detention Center ("CADC") in Florence, Arizona, which began on or about July 2, 2001. Before the Court are Defendants' dispositive motions seeking judgment in their favor on the ground that Plaintiff failed to exhaust available administrative remedies before filing this action.[2]

I.  Summary Judgment Standard

Summary judgment is granted to the movant if it has shown, when the facts are viewed in the light most favorable to the non-movant, that there are no genuine issues

---

[1] According to its website (www.transcor.com/factsheet), TransCor America, LLC became a wholly-owned subsidiary of CCA in 1995.

[2] The Court will grant the District of Columbia's motions for joinder in CCA/TransCor's motion and supporting papers [Dkt. #31-32].

of material fact in dispute and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier of fact could find for the nonmoving party. *See id.* at 251-52 (court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"); *Laningham v. U. S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). When evaluating a summary judgment motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

II. Exhaustion under the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") in relevant part provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  This exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 127 S.Ct. 910, 918-19 (2007).  Exhaustion under the PLRA requires proper exhaustion, meaning that a prisoner must comply with procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process.  *Woodford v. Ngo*, 126 S.Ct. 2378, 2384 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies.  *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).

### A.  CADC's Grievance Procedure

The record shows that CADC "provides all inmates with an Inmate Handbook, which contains a summary of the facility grievance policies and procedures, upon their arrival to the facility."  Defs. Corrections Corporation of America & TransCor's Mot. for J. on the Pleadings or, in the Alternative, for Summ. J. ("CCA/TransCor Mot."), Ex. 1 ("Richey Aff.") ¶ 4.  Grievable matters "include issues regarding the application of policies, rules and procedures; individual staff and inmate actions, including any denial of access to the grievance procedure; reprisals and retaliation against inmates for filing an appeal; loss of property; and any other matter relating to the conditions of care and supervision within the

authority of CCA." *Id.* ¶ 6. Institutional transfers, however, are not grievable matters.[3] *Id.*

CCA explains the inmate grievance procedure in effect at CADC in July 2001 as follows:

> The issue in question must be grievable in nature as set forth in the policy, and must be filed by the inmate who has experienced the incident or problem. An inmate cannot file a grievance on behalf of another inmate. The inmate must complete, in its entirety, the approved grievance form for the facility and forward it to the grievance officer in the manner prescribed by the policy. Grievances must be filed within seven days of the incident or problem in question. The facility grievance officer is responsible for reviewing the grievance, investigating and preparing a written decision. This must be done within 15 days of receipt of the grievance. An inmate must appeal any decision on a grievance within five days of receiving the decision. The total time allowed for resolution of a grievance is 90 days from the initial filing to the final appeal. All decisions on grievances can be appealed by the inmate if he or she is dissatisfied with the resolution. A grievance will be considered settled if an inmate does not choose to appeal.

*Id.* ¶ 5. An inmate fails to exhaust the available administrative remedies if he "fails to follow this procedure or omits any part of it." *Id.* ¶ 7.

According to CCA, Plaintiff submitted three grievances pertaining to his transfer from NEOCC to CADC, none of which was timely filed.[4] *See* Richey Aff. ¶ 20.

### 1. Grievance No. 01-0326

Plaintiff submitted his first inmate grievance pertaining to his transfer on July 12, 2001. Richey Decl., Attach. A (Grievance No. 01-0326). He complained that he "was handcuffed and shackled for more than 42 hours, which caused severe swelling and pain

---

[3] Other non-grievable matters are "state and federal court decision[s]; state and federal laws and regulations; final decisions on grievances; and contracting agency policies, procedures, decisions or matters." Richey Aff. ¶ 6.

[4] None of these grievances mentions any of the other claims raised in Plaintiff's complaint. *See* Compl. at 7-10; Richey Aff. ¶ 19.

in [his] hands and feet." *Id.* at 1. In addition, he claimed that staff refused to uncuff him so that he could defecate. *Id.* Plaintiff sought the address and telephone number of CCA's main office so that he could pursue a civil action against the corporation. *Id.* The CADC grievance officer's response explained that, because TransCor transported Plaintiff, "this issue is out of this facilit[y's] control." *Id.* (July 18, 2001 Memorandum from Grievance and Compliance Coordinators). Plaintiff was "advised . . . that the proper administrative remedy would be to send a letter outlining his complaints to Mr. Corlew, the TransCor Director of Quality Assurance, and provided the address to which his complaint should be directed." Richey Decl. ¶ 10. Finally, because Plaintiff submitted his grievance eight days after his July 4, 2001, arrival at CADC, Grievance No. 01-0326 was deemed untimely. *Id.* ¶ 11.

Plaintiff appealed the grievance officer's decision on or about June 27, 2001. Richey Decl., ¶ 14 & Attach. A (Appeal, Grievance No. 01-0326) at 2. His appeal included not only the claims raised in the initial grievance about the handcuffs and shackles, but also purported to bring claims on behalf of 35 other inmates who were similarly restrained, denied use of a restroom, and exposed to second-hand cigarette smoke. *Id.*, Attach. A at 2. These additional claims were deemed impermissible because Plaintiff could not file a grievance on behalf of other inmates. Richey Aff. ¶ 15. In addition, the claim regarding Plaintiff's exposure to second-hand smoke was untimely because the grievance was submitted 23 days after the incident. *Id.* CADC's Warden affirmed the grievance officer's response on August 14, 2001, and again stated that the correct course of action would be a letter to TransCor. *Id.* ¶ 18 & Attach. A at 2.

### 2. Grievance No. 01-0375

On July 26, 2001, Plaintiff submitted a second grievance in which he acknowledged receipt of the grievance officer's response to Grievance No. 01-0326. Richey Decl., Attach. B (Grievance No. 01-0375). The relief he requested was "the proper paperwork that allows the opportunity to file an administrative appeal, which will allow [him] to exhaust all of [his] institutional remedies." *Id.* The grievance officer's response advised Plaintiff that he already had been given instructions for the filing of an appeal. *Id.*

### 3. Grievance No. 01-0385

Plaintiff's final grievance was filed on July 27, 2001. Richey Aff. ¶ 16 & Attach. C (Grievance No. 01-0385). Again acknowledging receipt of the grievance officer's response to Grievance No. 01-0326, he complained that he received "an insufficient copy of the grievance officer's decision" because the response did not include a carbon copy of the appeal. *Id.* The grievance officer advised that carbon copies were not provided, and that Plaintiff would receive a photocopy after the Warden decided the appeal. *Id.* ¶ 16.

Plaintiff's opposition stresses the fact that claims related to his transport from NOECC to CADC are not grievable under CCA's inmate grievance policy. *See* Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings or, in the Alternative, for Summ. J. ("Pl.'s Opp'n") at 5-9. Nothing in his papers addresses the timeliness of the filing of his grievances according to CADC's procedures. The untimely filing of an inmate grievance alone supports the conclusion that Plaintiff failed to properly exhaust his administrative remedies. Here, CCA demonstrates that Plaintiff's grievance with respect to the conditions of his transport was filed eight days after his arrival at CADC, and thus was not timely filed.

Plaintiff's failure to exhaust administrative remedies bars any claim he may have against CCA and, by extension, against the District of Columbia.

### B.  TransCor's Informal Grievance Policy

The record shows that "TransCor has an informal grievance policy, whereby inmates . . . who have complaints about the conditions of transport are encouraged to send a written complaint to the Quality Assurance Department (at the time of Plaintiff's transport) or to the Managing Director of Operations (currently)." CCA/TransCor Mot., Ex. 2 ("Batson Aff.") ¶ 5. Such a complaint is assigned to a TransCor staff member who initiates an investigation. *Id.* A search of TransCor's records for the period beginning July 1, 2001, reveals that "no complaint letter or statement was received from [Plaintiff] relating to the conditions of his transport from Youngstown, Ohio to Florence, Arizona in July 2001," *id.* ¶ 6, and that "[n]o investigation was initiated in response to any complaint or situation arising during [Plaintiff's] transportation to Florence, Arizona." *Id.* ¶ 7.

Plaintiff counters that he did send a written complaint to TransCor and that he received no response. Pl.'s Opp'n, Ex. 4 (Pl.'s Aff.) ¶¶ 4-5 & Attach. (July 27, 2001 letter to Mr. Corlew). Plaintiff's showing is sufficient to establish the existence of a genuine issue of material fact with respect to his exhaustion of available administrative remedies with TransCor.

### III.  Conclusion

Defendants have demonstrated that Plaintiff failed to properly exhaust the administrative remedies available to him at CADC, and that CCA and the District of Columbia are entitled to judgment in their favor. But there remains a genuine issue of material fact as to whether Plaintiff exhausted any administrative remedies available to him

under TransCor's informal grievance policy. Accordingly, Defendants' motion will be granted in part and denied in part. A memorializing order accompanies this Memorandum Opinion.


Date: September 6, 2007                              /s/
                                         ROSEMARY M. COLLYER
                                         United States District Judge